## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| DAVID S. HARWOOD | § | |
| _____ | § | Case No. 6:09-cv-112 (LEAD) |
| | § | 6:09-cv-126 |
| DAVID S. HARWOOD, | § | |
|          Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| FNFS, LTD and | § | |
| B & W FINANCE CO. INC., | § | |
|          Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

This appeal arises out of the bankruptcy proceeding of David Harwood. The bankruptcy court held that Harwood's debt to appellee FNFS, Ltd. (FNFS) could not be discharged through bankruptcy proceedings. Harwood appealed the bankruptcy court's order. FNFS filed a cross-appeal on alternative grounds. For the reasons discussed below, the Court AFFIRMS the bankruptcy court's opinion.

## I.      BACKGROUND

Debtor David Harwood was the president and CEO of B&W Finance Co., Inc. (B&W). Harwood was one of three corporate officers and a fifty percent (50%) shareholder. B&W was governed by a Board of Directors of local business leaders.

B&W was the general partner of FNFS. Harwood handled the daily operations of FNFS, and held himself out as its president.

Debtor Harwood repeatedly borrowed funds from FNFS totaling more than $800,000 over seven years. These funds were transferred to Harwood's personal accounts for his personal use. Furthermore, although Harwood executed promissory notes for some of these transactions, he never ensured that the deeds of trust were filed, thus leaving FNFS with an unperfected interest.

In addressing Harwood's process in obtaining the funds, the bankruptcy court explains that "[t]here was no formal procedure for Harwood to obtain these financial benefits." Harwood exceeded the self-imposed cap on his lending and continued to withdraw funds from FNFS even while he failed to pay interest on his existing debt. The B&W board approved all employee loans, including those by Harwood, although the bankruptcy court found that the board paid little attention to day-to-day operations and was only generally aware of Harwood's growing indebtedness to FNFS.

FNFS ultimately suffered financial difficulties, which brought to light the excessive debt Harwood owed FNFS. Subsequently, B&W — the general partner of FNFS — fired Harwood.

Debtor Harwood later sought to have his debts discharged under Chapter 7 of the bankruptcy code. FNFS challenged discharge of the debt Harwood owed FNFS.

The bankruptcy code excludes certain debts from discharge. 11 U.S.C. § 523. FNFS argued before the bankruptcy court that Harwood's debt could not be discharged under several of the grounds set forth in 11 U.S.C. § 523. The bankruptcy court found in favor of FNFS on one of the grounds asserted: Harwood's debt resulted from a defalcation while Harwood was acting in a fiduciary capacity. However, the bankruptcy court denied relief on each alternative ground asserted by FNFS.

II.     ISSUES ON APPEAL

   A.     The Appeal

Debtor Harwood has appealed the bankruptcy court's refusal to discharge Harwood's debt to FNFS. Specifically, Harwood raises the following issues:

> 1. Did the bankruptcy court err in concluding that Harwood owed a fiduciary duty to FNFS?
>
> 2. Did the bankruptcy court err in concluding that Harwood's failure to file the deeds of trust (or to ensure they were filed) was a defalcation? *See* 11 U.S.C. § 523(a)(4)

**B.      The Cross-Appeal**

Creditor FNFS has appealed the bankruptcy court's conclusions on alternate grounds for exclusion of Harwood's debt from discharge.  The cross-appeal raises the following issues:

> 1) Did the bankruptcy court err in concluding that Harwood did not willfully or maliciously injure FNFS? *See* 11 U.S.C. § 523(a)(6).
>
> 2) Did the bankruptcy court err in concluding that Harwood did not obtain or renew one or more loans from FNFS by false pretenses, false representations, or actual fraud? *See* 11 U.S.C. § 523(a)(2)(A).
>
> 3) Did the bankruptcy court err in concluding that Harwood did not owe a debt for fraud while acting in a fiduciary capacity?  *See* 11 U.S.C. § 523(a)(4).
>
> 4) Did the bankruptcy court err in concluding that Harwood's act of taking the loans from FNFS (as opposed to his failure to file the deeds of trust) was not a defalcation? *See* 11 U.S.C. § 523(a)(4).

**III.      JURISDICTION AND STANDARD**

This Court has jurisdiction to consider this appeal pursuant to 28 U.S.C. § 158(a).  An appeal from the bankruptcy court to the district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the court of appeals from the district courts."  28 U.S.C. § 158(c)(2).  When reviewing the case, the "district court functions as an appellate court and applies

the same standard of review generally applied in federal appellate courts." *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992).

Pursuant to Federal Rule of Bankruptcy Procedure 8013, when reviewing a decision of the bankruptcy court, the district court must accept the bankruptcy court's findings of fact unless clearly erroneous and examine *de novo* the conclusions of law. *See Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307–08 (5th Cir. 1985). Under the clearly erroneous standard, the court will only reverse if, after reviewing all of the evidence in the record, the court is "left with the definite and firm conviction that a mistake has been made" *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 565 (5th Cir. 1995) (quoting *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)). Moreover, a bankruptcy court's findings based on credibility determinations are entitled to significant weight because the bankruptcy judge is "in a far superior position to gauge [the debtor's] credibility" than a court reviewing only the cold record. *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 373 (5th Cir. 2005) (quoting *First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 814 (5th Cir. 1992)).

## IV. ANALYSIS

### A. Harwood owed a fiduciary duty to FNFS

Debtor Harwood was the president of B&W — the corporate general partner of FNFS. The bankruptcy court found that Harwood controlled the daily operations of FNFS. Based on the two-tiered structure of the entities and also based on Harwood's actual position of control and trust over FNFS, the bankruptcy court determined that Harwood owed a fiduciary duty to FNFS. Harwood challenges that finding.

The question of whether a fiduciary duty exists for purposes of the bankruptcy code is a matter of federal law and is subject to *de novo* review by this Court. *LSP P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993). Although federal law governs, the Court should be guided by state law in determining whether a relationship of trust exists. *Gupta v. E. Idaho Tumor Inst., Inc. (In re Gupta)*, 394 F.3d 347, 349–50 (5th Cir. 2004). Fiduciary duties only apply in cases that involve express or technical trusts, *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998), but a trust agreement is not required to impose a duty. *In re Bennett*, 989 F.2d at 784–85. Relationships are fiduciary for purposes of the bankruptcy code when statutory or common law imposes trust-like duties, such as the duty a corporate officer owes to a corporation. *In re Bennett*, 989 F.2d at 784–85.

Harwood was the president of B&W, but the issue on appeal is Harwood's duty to FNFS. B&W was the corporate general partner of FNFS. In other words, Harwood's relationship with FNFS was indirect: He was the president and 50% shareholder of the corporate general partner. Despite Harwood's indirect formal relationship with FNFS, the law imposes a fiduciary duty on Harwood because he controlled the daily operations of FNFS.

The law is clear that a fiduciary relationship would exist if Harwood had a direct relationship with FNFS, such as serving as its president. For example, a corporate officer owes a fiduciary duty to the corporation. *Moreno v. Ashworth*, 892 F.2d 417, 421. Likewise, a managing partner owes a fiduciary duty to the partnership. *In re Bennet*, 989 F.2d at 787.

The law also imposes a fiduciary duty in a two-tiered business model. When a limited partnership acts as the managing partner of another limited partnership, the individual controlling the first partnership (its managing partner) owes a duty to both. *In re Bennett*, 989 F.2d at 790. The

same rule applies to the president of a limited liability company that acts as the managing partner of a limited partnership. *McBeth v. Carpenter*, 565 F.3d 171, 175, 178 (5th Cir. 2009). Finally, the sole shareholder and director of a corporate managing partner owes fiduciary duties to the limited partnership when he controls corporate actions. *Park v. Moorad (In re Moorad)*, 132 B.R. 58, 62–63 (Bankr. N.D. Okla. 1991).

The distinction between the authority cited above and this case is that Harwood was the president, but not the sole shareholder, of B&W. This distinction does not alleviate Harwood of his fiduciary responsibilities in conducting the business of FNFS. In a two-tiered business structure, "the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility." *In re Bennett*, 989 F.2d at 789. When the president of a corporate managing partner controls the partnership's daily operations, the president owes a fiduciary duty to the partnership. *See Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 186 (5th Cir. 1997).

As discussed above and admitted by Harwood, the key issue in determining a fiduciary relationship in a two-tiered corporate structure is the degree of control exercised over the entity. The bankruptcy court found that Debtor Harwood "was in control of the day-to-day activities of B&W and FNFS in an almost autocratic fashion." The court further found that " [n]o one with daily involvement ... could realistically challenge Harwood's authority or decision-making." Because of the two-tiered structure that gave Harwood control of FNFS's daily operations, the bankruptcy court found that Harwood stood in a fiduciary capacity with FNFS.

However, Harwood challenges the evidentiary basis for the bankruptcy court's finding that he exercised control over the daily operations of FNFS. The bankruptcy court's factual findings are reviewed under the clearly erroneous standard, and the reviewing court should uphold the findings

unless it has a firm and definite conviction that a mistake has been made. *In re Walker*, 51 F.3d at 565.

Harwood argues that evidence relied on by the bankruptcy court does not predate the loans. Harwood cites the rule that "the requisite trust relationship must exist prior to the act creating the debt and without reference to that act." *In re Bennett*, 989 F.2d at 784.

Harwood's argument is misplaced. Much of the evidence supporting the bankruptcy court's conclusion that Harwood controlled the daily operations of FNFS pre-dates the loans he made to himself. For example, the record includes the FNFS partnership agreement, testimony from Harwood regarding his role and authority over the operations of FNFS, and testimony from Kathy Mallory — a former FNFS employee — that Harwood controlled the operations of FNFS.

Furthermore, Harwood overextends the meaning of the rule stated in *In re Bennett*. The court's statement that the trust relationship must exist prior to the act creating the debt simply means that a constructive trust is not enough to impose fiduciary duties. *In re Bennett*, 989 F.2d at 784. In the instant case, the bankruptcy court referred to Harwood's unfettered control in making the loans to himself as circumstantial evidence of his *previously existing* position of power. The bankruptcy judge did not find that Harwood's loans resulted in a constructive trust or that they were even a defalcation under the bankruptcy code. (The court found that Harwood's failure to file the deeds of trust collateralizing his loans — not the loans themselves — constituted a defalcation.) Instead, the bankruptcy judge looked at the manner in which the loans were made as additional evidence of the degree of control that Harwood had over FNFS.

Accordingly, the bankruptcy court finding that Harwood stood in a fiduciary relationship with FNFS is properly supported by the law and the evidence.

**B.      Harwood Committed a Defalcation**

Harwood also challenges the bankruptcy court's finding that his debt to FNFS resulted from

a defalcation, which is not dischargeable under the bankruptcy code.  11 U.S.C. § 523(a)(4).  The

bankruptcy court's conclusion that Harwood's debt resulted from a defalcation is a mixed question

of law to fact and is reviewed *de novo*.  *In re Bennett*, 989 F.2d 779, 781 n.3 (5th Cir. 1993).  For

the reasons discussed below, the Court agrees that Harwood's debt resulted from a defalcation.

Defalcation is "a willful neglect of duty, even if not accompanied by fraud or embezzlement."

*In re Schwager*, 121 F.3d 177, 184 (5th Cir. 1997). A recklessness standard applies when

determining whether acts constitute a defalcation. *In re Schwager*, 121 F.3d at 184.

Harwood withdrew more than $800,000 of FNFS funds as personal loans.  Harwood secured

these loans with deeds of trust on real property.  However, the deeds of trust were never recorded.

The bankruptcy court found that Harwood acted with a reckless disregard to his duties by failing to

ensure that the deeds of trust were properly recorded.  Thus, the debts were not discharged in the

bankruptcy proceedings.

Harwood argues that his actions did not constitute a defalcation for two reasons: (1) B&W

shareholder Wayne McKinney, and not Harwood, was responsible for recording the deeds of trust,

and (2) Harwood placed FNFS in a better financial position by executing the deeds of trust, even if

they were not properly recorded.  The Court finds neither of Harwood's arguments compelling and

upholds the finding of the bankruptcy court.

The evidence demonstrates that Harwood, and not McKinney, was the "banking specialist"

of FNFS.  Harwood was an experienced and knowledgeable banking professional charged with the

partnership's well-being. Harwood willfully neglected his duty by handing off the recording responsibility to McKinney, who did not share Harwood's financial acumen, and then failing to make sure McKinney actually filed them. (Harwood's failure to ensure that McKinney filed the deeds of trust was a secondary issue only relevant because Harwood delegated the responsibility in the first place.) Harwood had a duty to maintain the financial health of FNFS. Yet, he recklessly failed to ensure that the deeds of trust securing his personal debt of more than $800,000 were properly recorded. As the bankruptcy court found, this constituted a defalcation.

Furthermore, the Court is not swayed by Harwood's argument that he placed FNFS in a better position when he executed the deeds of trust, even if they weren't properly recorded. Harwood owed a duty to protect FNFS from financial harm. This included properly securing the more than $800,000 in personal loans he withdrew in FNFS funds. Harwood is not redeemed by making it halfway to the goal.

Harwood was an experienced banking professional and thus well-aware that his failure to properly record the deeds of trust could potentially render them valueless. Furthermore, Harwood directly benefitted from his failure to record the deeds of trust when he pledged the same property to obtain loans from another bank.

Harwood's failure to ensure that the deeds of trust were recorded was a willful neglect of his duty to FNFS. Thus, this failure to record the deeds was a defalcation while acting in a fiduciary duty. Accordingly, Harwood's debt could not be discharged in the bankruptcy proceedings.

## V.     CROSS APPEAL

Because the Court affirms the bankruptcy court's holdings on the issues raised in Harwood's

appeal, the Court does not reach the alternative grounds raised in the cross-appeal filed by FNFS.

## VI.    CONCLUSION

For the reasons previously stated, the United States bankruptcy judge did not commit reversible error in holding that Debtor David Harwood's debt resulted from a defalcation while acting in a fiduciary capacity, and therefore, his debts are not subject to discharge.  Accordingly, the opinion of the United States Bankruptcy Court for the Eastern District of Texas, in the above-styled matter, is AFFIRMED.

**It is SO ORDERED.**

**SIGNED this 30th day of March, 2010.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE